UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

James Richard Huntsman,                                Civ. No. 19-02 (PAM/DTS)

    Plaintiff,

v.                                                     **MEMORANDUM AND ORDER**

3M Company, 3M Company Employee
Retirement Income Plan, Zenith Annette
Huntsman, and Plan Administrator for the
3M Employee Retirement Income Plan,

    Defendants.

---

This matter is before the Court on the Defendants' Motions to Dismiss and Plaintiff's Motion for a Temporary Restraining Order. For the following reasons, the Motions to Dismiss are granted and the Motion for Temporary Restraining Order is denied.

**BACKGROUND**

Plaintiff James R. Huntsman has tried for years to reduce or eliminate the spousal maintenance obligations originally imposed in 2000, when Plaintiff and his wife, Defendant Zenith Annette Huntsman, dissolved their 31-year marriage. He has brought no fewer than 18 state-court appeals over the past 19 years, at least one of which is still pending. This lawsuit seeks to force his former employer, Defendant 3M Company, to stop giving a portion of his pension proceeds to his ex-wife.

Indeed, Mr. Huntsman is a restricted filer in state court because of how often he has challenged the property divisions from the divorce. Huntsman v. Huntsman, No. A12-2147, 2013 WL 5777908, at *8 (Minn. Ct. App. Oct. 28, 2013); see also Huntsman v.

Huntsman, No. A19-40, 2019 WL 3293806, at *3 (Minn. Ct. App. July 22, 2019) ("It is now almost two decades since [Mr. Huntsman] began his protracted litigation in opposition to [Mrs. Huntsman's] awards of maintenance and attorney fees, and his tactics do not seem to have changed from those rejected by this court in 2013."). This case represents Mr. Huntsman's second foray into federal court.

The Huntsmans divorced in 2000 in Washington County. The divorce decree provided that Mr. Huntsman would pay spousal maintenance, and also specifically provided that a portion of Mr. Huntsman's pension benefit in the Defendant 3M Employee Retirement Income Plan ("ERIP") would go to Mrs. Huntsman. To that end, the Washington County court issued a qualified domestic relations order under ERISA, directing Defendant 3M Plan Administrator[1] regarding the division of the pension benefit. See 29 U.S.C. § 1056(d)(3)(G)(ii) (procedures for qualification of domestic relations orders under ERISA).

Mr. Huntsman began receiving his monthly pension benefit of $3,259.09 in 2007. Shortly thereafter, he moved the Washington County court to reduce his spousal maintenance obligations, but that motion was denied. And in fact, because of Mr. Huntsman's recalcitrance in making spousal maintenance payments and his attempts to litigate and re-litigate the issue of his obligations, in 2010 the court amended the previously issued qualified domestic relations order (QDRO). The 2010 QDRO provided that Mr. Huntsman's spousal maintenance payments be made directly to Mrs. Huntsman from Mr.

---

[1] For ease of reading, the Court will refer to the 3M Defendants collectively as "3M," unless the action described is one taken by the Plan Administrator.

2

Huntsman's pension benefits. The 3M Plan Administrator reviewed the QDRO and determined that it met the statutory requirements, and after Mr. Huntsman appealed, made the final determination that the QDRO was enforceable. 3M thus began directly paying Mrs. Huntsman a portion of Mr. Huntsman's pension benefits.

Mr. Huntsman then filed a lawsuit in federal court. Huntsman v. Angell, No. 11cv844 (D. Minn. filed Apr. 6, 2011). The lawsuit was stayed pending Mr. Huntsman's appeal of the 2010 QDRO to the Minnesota Court of Appeals, and shortly thereafter was dismissed without prejudice. (Docket Nos. 8, 9.) The Court of Appeals ultimately affirmed the 2010 QDRO. Huntsman v. Huntsman, No. A10-930, 2011 WL 2119336 (Minn. Ct. App. May 31, 2011).

The Washington County court twice more amended the QDROs to increase the amounts Mrs. Huntsman was to be paid from the pension benefits. In 2015, the court once again issued a new QDRO, ordering the payment to Mrs. Huntsman not only of the previously determined base amount of $1,400 per month but an additional $600 per month because Mr. Huntsman's spousal maintenance obligations were in arrears and because of the attorney's fees Mrs. Huntsman had been forced to expend defending the QDROs in various fora.

In 2018, the state court once again modified the QDRO. The new QDRO ordered the payment of an additional $1,000 per month out of Mr. Huntsman's pension benefits directly to Mrs. Huntsman, for a total of $3,000 per month. The Plan Administrator overruled Mr. Huntman's appeal and found that the 2018 QDRO was a qualified QDRO. Because of the instant lawsuit, 3M has not paid the additional $1,000 per month to Mrs.

Huntsman but has placed that amount in escrow and has continued to pay her $2,000 per month under the 2015 QDRO.

Huntsman's Amended Complaint raises eight claims. Count I contends that 3M is violating ERISA and the state and U.S. Constitution by not escrowing the full $3,000 per month but only escrowing $1,000 per month. He asserts that 3M's failure to properly escrow the full amount will cause him "irreparable financial harm." (Am. Compl. ¶ 131.) Count II claims that Mrs. Huntsman waived all rights to Mr. Huntsman's pension benefits in the original divorce decree, and that the decree is not subject to modification. Count III contends that the state court lacked jurisdiction to modify the original QDRO and thus that every QDRO issued thereafter is void under ERISA. Count IV claims that Mrs. Huntsman's failure to abide by the agreement she made in the original divorce decree constitutes a breach of contract. Count V raises ERISA fiduciary-duty violations against 3M arising out of the failure to pay Mr. Huntsman the full amount of his pension benefits. Count VI takes issue with the state court's determination that the additional payments ordered in 2018 were justified as payments in equity, claiming that ERISA does not allow any equitable exceptions. It's not clear against whom this Count is directed. Count VII argues that ERISA does not allow the state court to order Mr. Huntsman to pay Mrs. Huntsman's attorney's fees out of his pension benefits. Count VIII contends that the 2018 QDRO violates Minnesota and federal withholding and garnishment laws. Count IX claims that the 2018 QDRO does not meet ERISA's requirements for a QDRO and thus is invalid. The final three Counts are claims for relief: estoppel (Count X), declaratory judgment (Count XI), and a claim for costs and disbursements (Count XII).

Both 3M and Mrs. Huntsman have moved to dismiss the claims against them. Mr. Huntsman thereafter moved for a Temporary Restraining Order seeking the same relief as in his Complaint.

**DISCUSSION**

**A.    Preclusion**

As an initial matter, it is clear that Mr. Huntsman's claims regarding the validity of state-court orders are barred by res judicata principles. Under federal law, res judicata applies when "'(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action.'" Elbert v. Carter, 903 F.3d 779, 782 (8th Cir. 2018) (quoting Costner v. URS Consultants, Inc., 153 F.3d 667, 673 (8th Cir. 1998)). Similarly, under Minnesota law, the res judicata bar applies when "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter." Hauschildt v. Beckingham, 686 N.W.2d 829, 840 (Minn. 2004).

Mr. Huntsman has either fully litigated the validity of the multiple state-court orders he challenges here or had the chance to do so. Thus, Mr. Huntsman cannot challenge the state court's authority for modifying the initial property division, or any of the modified QDROs save for the most recent. See, e.g., Huntsman v. Huntsman, No. A10-930, 2011 WL 2119336, at *7 (Minn. Ct. App. May 31, 2011) (affirming district court's decision to require Mr. Huntsman to pay spousal maintenance arrears out of his pension benefits and

finding that the district court "did not lack the authority to issue the August 24, 2010 QDRO"). To the extent his claims rely on these challenges, they must be dismissed.

Similarly, the state courts have already ruled on Mr. Huntsman's claim that the direct payments to Mrs. Huntsman violate state and federal wage and garnishment laws, see id. at *8 (rejecting as raised for the first time on appeal Mr. Huntsman's argument that use of his retirement account to satisfy maintenance obligations violates federal and state wage and garnishment laws), and have determined that the state court was within its authority to order the payment of Mrs. Huntsman's attorney's fees from the pension payments. See id. at *9 (affirming district court's attorney's fees award to Mrs. Huntsman). Preclusion principles bar Mr. Huntsman from relitigating these issues, and Counts II, III, VI, and VIII must be dismissed.

Moreover, to the extent that Mr. Huntsman asks this Court to review the state court's determination regarding the equitable basis for the payments it ordered or challenges to the state-court's judgment under ERISA, any such review is barred by the Rooker-Feldman doctrine. See Lance v. Davis, 546 U.S. 459, 465 (2006) ("[U]nder . . . the Rooker-Feldman doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.") Counts VI and VII must likewise be dismissed.

**B. Breach of Contract**

The only remaining claim against Mrs. Huntsman is Count IV, claiming breach of contract. But even if a divorce decree is a contract, state law allows such decrees to be modified, and indeed the state courts have repeatedly affirmed the modifications of the Huntsmans' divorce decree. And in any event, a claim that the parties' agreements

6

prevented Mrs. Huntsman from pursuing Mr. Huntsman's pension benefits was ripe in 2010, when the state court first ordered 3M to pay more of those benefits to Mrs. Huntsman. The statute of limitations for breach of contract claims in Minnesota is six years. Minn. Stat. § 541.05, subd. 1. Even if not frivolous, this claim is untimely.

**C.    ERISA**

Mr. Huntsman raises several claims against 3M purportedly under ERISA. First, in Count I he contends that by failing to escrow the entire $3,000 payment to Mrs. Huntsman, 3M is violating ERISA and both the state and federal constitutions. Next, Count V contends that 3M's failure to pay the full amount of Mr. Huntsman's pension benefits to him is a breach of 3M's fiduciary duties under ERISA. Finally, in Count IX, he claims that the 2018 QDRO is not a QDRO under ERISA.

QRDOs are an exception to ERISA's general rule that "benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). State domestic relations orders may assign a non-participant rights to a participant's plan benefits only if the order meets ERISA's criteria. See id. § 1056(d)(3)(B)-(E). These criteria include that the order "is made pursuant to a State domestic relations law," id. § 1056(d)(3)(B)(ii)(II), and includes information such as the participant's name and mailing address and the amount or percentage of the benefits to be paid to the non-participant, id. § 1056(d)(3)(C)(ii).

ERISA requires a plan to "establish reasonable procedures to determine" whether domestic relations orders qualify under ERISA's criteria. Id. § 1056(d)(3)(G)(ii). A plan administrator's determination regarding whether an order is a QDRO discharges the plan's obligations under ERISA. Id. § 1056(d)(3)(I).

7

"Compliance with a QDRO is obligatory." Blue v. UAL Corp., 160 F.3d 383, 385 (7th Cir. 1998). In other words, once a plan administrator determines that a domestic-relations order is a QDRO under ERISA's definition, the administrator must comply with the QDRO's directives as to distribution of plan benefits. See 29 U.S.C. § 1056(d)(3)(A) (providing that "[e]ach pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order"). Thus, ERISA does not permit a plan administrator to look behind the QDRO to determine, for example, if state law allows the payment the QDRO requires.

Mr. Huntsman's allegations that the 2018 QDRO does not meet ERISA's criteria is specious. As the 3M Plan Administrator found, the 2018 QDRO met all of the criteria to be a QDRO under ERISA. Thus, the administrator was required to pay benefits pursuant to the QDRO. Count IX is dismissed.

Similarly, there can be no claim against 3M for allegedly improper escrow of benefits. The 2015 QDRO required 3M to pay Mrs. Huntsman $2,000 per month. The Minnesota Court of Appeals affirmed the 2015 QDRO. Huntsman v. Huntsman, No. A15-1781 (Def.'s Ex. E.), at 8. Thus, this QDRO is not at issue here. There is no statutory or constitutional violation in the escrow procedures the administrator used in this matter.

Finally, because the administrator correctly determined that the 2018 QDRO complied with ERISA, there can be no breach of fiduciary duty here.

**D.     TRO**

Having determined that none of Huntsman's claims state a claim on which relief can be granted, his request for a TRO necessarily fails. See Dataphase Sys., Inc. v. CL

8

Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (finding that, for injunctive relief to issue, movant must demonstrate, inter alia, a likelihood of success on the merits of his claims).

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. The Motion to Dismiss of Defendants 3M Company, 3M Company Employee Retirement Income Plan, and Plan Administrator for the 3M Employee Retirement Income Plan (Docket No. 28) is **GRANTED**;

2. Defendant Zenith Annette Huntsman's Motion to Dismiss (Docket No. 31) is **GRANTED**;

3. The Amended Complaint (Docket No. 24) is **DISMISSED with prejudice**; and

4. Plaintiff's Motion for a Temporary Restraining Order (Docket No. 33) is **DENIED as moot**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  August 26, 2019

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge